IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RAKEEM HARVEY, | ) | |
| | ) | |
| Plaintiff, | ) | 9:03CV838 |
| v. | ) | |
| | ) | |
| GLENN S. GOORD, Commissioner | ) | MEMORANDUM OPINION |
| for New York State Department | ) | |
| of Correctional Services; | ) | |
| DAVID L. MILLER, | ) | |
| Superintendent at Eastern | ) | |
| Correctional Facility; GARY H. | ) | |
| FILION, Superintendent at | ) | |
| Coxsackie Correctional | ) | |
| Facility; RAELENE MILICEVIC, | ) | |
| DR., Eastern Correctional | ) | |
| Facility Medical Department | ) | |
| Administrator; MICHAEL | ) | |
| GUSMAN DR., Eastern | ) | |
| Correctional Facility Medical | ) | |
| Physician; PAULA. G. | ) | |
| OSTERHOUT, Eastern | ) | |
| Correctional Facility Medical | ) | |
| Department Nurse, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

        This matter is before the Court on defendants' motion

for summary judgment (Filing No. 41).  Having carefully reviewed

the motion, responses, the briefs of the parties, the evidentiary

submissions, plaintiff's 327-page medical record and the

applicable law the Court will grant defendants' motion.

### I.  PLAINTIFF'S CLAIMS

        Plaintiff Rakeem Harvey ("Harvey") brings this action

pursuant to 42 U.S.C. § 1983, alleging defendants Glenn S. Goord,

David Miller, Gary Filion, Raelene Milicevic, M.D.[1] ("Dr. Milicevic"), Mikhail Gusman, M.D.[2] ("Dr. Gusman"), and Paula Osterhout ("Nurse Osterhout") violated his constitutional rights when they exhibited deliberate indifference to his medical needs in their treatment of an injury to his left eye, an injury to a finger and in failing to provide prescribed medications.  Harvey also asserts a claim of retaliation, asserting that he was transferred out of Eastern Correctional Facility in retaliation for filing a medical grievance.

## II.   STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could

---

[1]   Dr. Milicevic's name is spelled alternatively in court documents as "Milecivic" and "Milicevic."  The Court will use Milicevic because that is the spelling used in Dr. Milicevic's affidavit.

[2]   Dr. Gusman's name is shown as "Michael" in the caption; his affidavit shows his first name as "Mikhail."

return a verdict for the nonmoving party.'"  *Gayle v. Gonyea,* 313

F.3d 677, 682 (2d Cir. 2002)(*quoting Anderson,* 477 U.S. at 248).

On a motion for summary judgment, all reasonable

factual inferences must be drawn in favor of the non-moving

party.  *See, e.g., Savino v. City of New York*, 331 F.3d 63, 71

(2d Cir. 2003)(*citing Anderson,* 477 U.S. at 255).  However, to

survive a motion for summary judgment, "the nonmoving party must

come forward with 'specific facts showing that there is a genuine

issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986)(emphasis omitted)(*quoting*

Fed. R. Civ. P. 56(e))(citation omitted).  "Conclusory

allegations, conjecture, and speculation . . . are insufficient

to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156

F.3d 396, 400 (2d Cir. 1998)(citation omitted).  Thus,

"statements that are devoid of any specifics, but replete with

conclusions, are insufficient to defeat a properly supported

motion for summary judgment."  *Bickerstaff v. Vassar Coll.*, 196

F.3d 435, 452 (2d Cir. 1999)(citations omitted), *cert. denied*,

530 U.S. 1242 (2000).  In addition, "the 'mere existence of a

scintilla of evidence' supporting the non-movant's case is . . .

insufficient to defeat summary judgment."  *Niagara Mohawk Power*

*Corp. v. Jones Chem. Inc.,* 315 F.3d 171, 175 (2d Cir.

2003)(*quoting Anderson*, 477 U.S. at 252).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy [its] burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Vann v. City of New York,* 72 F.3d 1040, 1048 (2d Cir. 1995) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)). Thus, a party "moving for summary judgment must prevail if the [non-movant] fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo,* 100 F.3d 253, 258 (2d Cir. 1996)(*citing Anderson,* 477 U.S. at 247-48). While the submissions of pro se litigants are liberally construed, *see, e.g., Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994), the fact that Harvey is "proceeding pro se does not otherwise relieve [him] from the usual requirements of summary judgment." *Fitzpatrick v. New York Cornell Hosp.,* 2002 U.S. Dist. LEXIS 25166, at *5 (S.D.N.Y. Jan.9, 2003)(citing cases).

### III.  DISCUSSION

**A.   Supervisory Defendants Goord, Miller, Filion and Milicevic**

Harvey's claims against defendant Goord are based on Goord's position as Commissioner of the New York State Department of Corrections while his claims against defendants Miller and Filion are based upon their roles as superintendents at the Eastern and Coxsackie Correctional Facilities respectively.

Harvey's claims against Dr. Milicevic are based upon her role as Medical Director at Eastern.  To be liable under § 1983, a prison official must have some personal involvement.  "Supervisor liability in a § 1983 action depends on a showing of some personal responsibility and cannot rest on respondeat superior. *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003)(citations omitted).

Supervisor liability under § 1983 can be shown by "(1) actual direct participation in the constitutional violation; (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring."  *Hernandez*, 341 F.3d at 145.  Thus, Harvey must demonstrate the personal involvement of Goord, Miller, Filion and Milicevic in the alleged constitutional violations to maintain his  cause of action as to these defendants.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

With respect to defendants Goord, Miller and Filion, the plaintiff has not rebutted the affidavits of these three parties.  In addition, in his deposition, he testified that each of them were sued simply because they were supervisors and not

because of any personal involvement.  *See* Harvey Dep. 138:22-
140:3, 141:18-142:11 and 142:12-24.  For these reasons, these
defendants' motion for summary judgment will be granted.

Harvey also has not produced evidence of personal
involvement by Dr. Milicevic.  In his deposition, Harvey asserted
that he was suing Dr. Milicevic not because of any care she
provided or allegedly failed to provide, but instead simply
because she was the Medical Director at Eastern (Deposition of
Rakeem Harvey ("Harvey Dep."), 144:15-145:11).  Harvey testified
that he "rarely, if ever" dealt with Dr. Milicevic, and that he
did not bring any complaints regarding his medical treatment to
her attention (Harvey Dep. 145:5-11).  Thus, Harvey's claims
against Dr. Milicevic are based solely upon her supervisory role,
and her motion for summary judgment will be granted.

## B.   Eighth Amendment Violation

The Eighth Amendment prohibits the infliction of "cruel
and unusual punishments."  U.S. Const. amend VIII.  This includes
punishments that "involve the unnecessary and wanton infliction
of pain."  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  In order
to establish an Eighth Amendment claim arising out of inadequate
medical care, a prisoner must prove "deliberate indifference to
[his] serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97,
104 (1976).  The standard of deliberate indifference includes
both subjective and objective components.  "First, the alleged

-6-

deprivation must be, in objective terms, 'sufficiently serious.'"
*Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)(citations
omitted).  Second, the defendant "must act with a sufficiently
culpable state of mind."  *Id*.  An official acts with the
requisite deliberate indifference when that official "knows of
and disregards an excessive risk to inmate health or safety; the
official must both be aware of facts from which the inference
could be drawn that a substantial risk of serious harm exists,
and he must also draw the inference."  *Farmer v. Brennan*, 511
U.S. 825, 837 (1994).  To establish the subjective component,
Harvey must demonstrate that defendants "knew of and disregarded
an excessive risk to [his] health or safety."  *Farmer*, 511 U.S.
at 837.  Prison officials are not liable "if they responded
reasonably to a known risk, even if the harm ultimately was not
averted."  *Id.* at 826; *see also Estelle*, 429 U.S. at 106-7
(prisoner not entitled to treatment by every medical alternative
as long as treatment is reasonable).

Thus, negligence or medical malpractice is insufficient
to support a claim of deliberate indifference.  *See Hendricks v.
Coughlin*, 942 F.2d 109, 113; *see also Estelle*, 429 U.S. at
105-06.  Moreover, mere differences of opinion regarding medical
treatment do not give rise to an Eighth Amendment violation.  *See
Estelle*, 429 U.S. at 107.  To the extent Harvey contests the

-7-

diagnosis and treatment that he received, he does not state a

valid claim of medical mistreatment under the Eighth Amendment.

At issue is whether Harvey's medical conditions are, as

a matter of law, sufficiently serious to give rise to an Eighth

Amendment claim.  To survive a motion for summary judgment,

Harvey must "come forward with 'specific facts showing that there

is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co.,*

475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e)).  Harvey has

alleged that defendants were deliberately indifferent to his well

being as evidenced by the treatment afforded to him for his

scratched eye and injured finger and delays or interruptions in

supplying him with two prescribed medications.

Of course, not all claims regarding improper medical

care will be constitutionally cognizable.  Eye conditions and

injured fingers, like other medical conditions, may be of varying

severity.  The standard for Eighth Amendment violations

contemplates "a condition of urgency" that may result in

"degeneration" or "extreme pain."  *Hathaway*, 37 F.3d at 66

(*quoting Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990)(Pratt,

J., dissenting)).  "A prisoner who nicks himself shaving

obviously does not have a constitutional right to cosmetic

surgery.  But if prison officials deliberately ignore the fact

that a prisoner has a five-inch gash on his cheek that is

becoming infected, the failure to provide appropriate treatment

might well violate the Eighth Amendment." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Similar distinctions may be drawn with respect to other medical conditions.

1.  Eye

Harvey's left eye was injured when he was poked in the eye by another prisoner while playing basketball (Defendants' Statement of Material Facts ("SOF"), ¶ 1; Harvey Dep. 6:14-17). A cornea which has been scratched by a fingernail is considered to be among the most difficult of eye injuries to treat (SOF, ¶ 41; Affidavit of Mikhail Gusman, M.D. ("Gusman Aff."), ¶ 40). While the epithelium, the outer layer of corneal cells, grows back quickly in one to four days, the epithelium can spontaneously come off again in the future, usually prompted by dryness on the surface of the eye (SOF, ¶ 41; Gusman Aff., ¶ 40). Thus the simplest and often most effective treatment are topical eye drops and ointments to keep the epithelium lubricated (SOF, ¶ 41; Gusman Aff., ¶ 40).

The initial injury occurred on November 12, 2000 (SOF, ¶ 1; Harvey Dep. 10:15-11:13; Medical Records of Rakeem Harvey ("MR") 171, 191). Harvey was immediately treated at the prison and examined remotely via a telemed linkup by a physician at the Albany Medical Center ("AMC") in Albany (SOF, ¶ 2; Gusman Aff. ¶ 5; MR 226). Later, Harvey was transported to AMC where he received emergency care for his eye injury (SOF, ¶¶ 4-5; Gusman

Aff. ¶¶ 7-8; MR 170; Affidavit of Rakeem Harvey ("Harvey Aff."),
¶ 4).  The next day, after being kept in medical confinement for
observation, Harvey was again transported to AMC and was seen by
an ophthalmologist who prescribed two medications for the injured
eye (SOF, ¶ 6; Gusman Aff. ¶ 9; MR 170, 186, 223).

On November 30, 2000, Harvey re-injured the same eye
during a basketball game (SOF, ¶ 7; Harvey Dep. 28:17-29:5;
Gusman Aff. ¶ 10; MR 168).  Again, Harvey received prompt
treatment at the prison, but after Dr. Gusman examined him and
determined that he should be immediately transported to the AMC
emergency room, Harvey refused (SOF, ¶ 7; Harvey Dep. 29:8-31:4;
Gusman Aff. ¶ 10; MR 168, 216, 221).  The next day, at the urging
of Dr. Gusman, Harvey consented to being transported to the AMC
emergency room where he was prescribed Tylenol 3 for pain and
ordered to take Ocuflox and Cyclogel (SOF, ¶ 8; Gusman Aff. ¶ 11;
MR 188).  Harvey was instructed to return to AMC for an
ophthalmology consultation the next day, but, after Dr. Gusman
had made all of the arrangements, Harvey refused to go and his
consultation at AMC was cancelled (SOF, ¶¶ 8-9; Gusman Aff. ¶ 12;
MR 167, 209, 218).  Harvey signed a Refusal of Medical
Examination Form stating, "I am refusing a medical trip because I
have receiving (sic) the necessary medication to provide
healing."  (SOF, ¶ 9; Gusman Aff. ¶ 12; MR 209).

Harvey's medical records reflect that, over the next year and a half, he complained five times of eye pain (SOF, ¶¶ 17, 21, 23-24, 30; MR 85, 154-55, 161-62).  Each time he was examined by a doctor and/or a nurse and no evidence of cuts, abrasions or infections were ever noted.  Once, on January 22, 2001, Harvey sought a follow-up examination of his eye, but a week later, on the day of the scheduled examination, Harvey refused to keep the appointment, noting that he had no complications regarding his eye in the past 168 hours (SOF, ¶ 18; Gusman Aff. ¶¶ 20-21; MR 162, 210; Harvey Aff. ¶ 10).

Four times between November, 2000, and April, 2002, Harvey was scheduled for an outside consultation regarding his eye (SOF, ¶¶ 9, 14, 19, 29; MR 84-85, 166-67, 188, 209).  Twice Harvey refused to go through with the consultation, and the two times he underwent the consultation, the examining physician found that the abrasion was resolved or that there was no sign of abrasion (SOF, ¶¶ 9, 14, 19, 29; Harvey Aff. ¶ 5; MR 84-85, 167-68, 188, 209).

On May 17, 2002, Harvey was seen for a corneal consultation by a Dr. Patel who prescribed Muro eye drops and ointment and recommended follow up in four months (SOF, ¶ 31; Gusman Aff. ¶ 34; MR 84).  Before the Muro prescription arrived, Harvey was transferred to Oneida from Eastern (SOF, ¶ 33; Gusman Aff. ¶ 36).  Apparently the prescription was delayed in getting

to Harvey because he complained that he had not received it as of June 24, 2002 (SOF, ¶ 36; Affidavit of Dr. Milicevic ("Milicevic Aff.") ¶ 40; MR 31).  The prescription arrived soon thereafter because on June 30, 2002, Harvey reported to emergency sick call at Oneida, complaining that his symptoms were worsened by the Muro (SOF, ¶ 37; Milicevic Aff. ¶ 41; MR 31, 81).  Dr. Alpert discontinued the Muro and replaced it with Erythromycin ointment (SOF, ¶ 37; Milicevic Aff. ¶ 41; MR 81).

The record reflects that each time Harvey complained about his eye, he was examined and treated.  Not only was Harvey seen by nurses and physicians at the prison, but he was also seen several times by outside specialists, and several other times had appointments scheduled for outside consultations with specialists that Harvey refused to keep.  Harvey stated that his eye condition was adequately managed while at Eastern through the use of prescription drops and ointments (SOF, ¶ 42; Harvey Dep. 120:7-17).  While Harvey asserts that one outside physician suggested that he could resolve Harvey's eye problem through one of three possible procedures (Harvey Dep. 133:4-138:11, MR 75), two of the three recommendations had been tried to no avail (Harvey Dep. 133:11-135:25).  The third option, laser surgery, is not considered to be a viable option by other ophthalmologists (Harvey Dep. 137:21-138:17).  Thus, the medical record does not establish that the defendants acted with the requisite deliberate

indifference to Harvey's medical needs regarding his eye condition.

Harvey cannot establish either the objective or subjective components, both of which are necessary to establish an Eighth Amendment claim.  He fails to establish the objective component because where he was cared for continuously for his condition, he cannot show the requisite serious deprivation that would violate contemporary standards of decency.  *Hathaway*, 37 F.3d at 66.  He also cannot demonstrate the required subjective component which necessitates a showing that the prison officials acted with a sufficiently culpable state of mind where his only real complaint has to do with a single alternative treatment which most ophthalmologists do not consider to be a viable option.  *Id.*  A difference of opinion as to a course of medical treatment is not evidence of a culpable state of mind.  *Estelle*, 429 U.S. at 107.  Therefore, defendants' motion for summary judgment as to the claims related to Harvey's eye injury and treatment will be granted.

2.   Finger

Harvey injured his right index finger on May 16, 2002. He appeared at emergency sick call that day with a finger that was swollen but with the skin unbroken (SOF, ¶ 44; MR 135).  A nurse x-rayed the finger and applied ice (SOF, ¶ 44; MR 62, 135). The x-ray showed the finger was not broken or dislocated (MR 62).

Harvey had Motrin in his cell which he took to control the pain
(SOF, ¶ 44; MR 135).  The next day, Friday, May 17, 2002, Harvey
requested and received an ice pack and painkillers for his finger
while at Coxsackie Regional Medical Unit for a previously
scheduled ophthalmology consultation (SOF, ¶ 45; Harvey Dep.
72:24-74:18).  Harvey asserts that later that day, at the 8:00
p.m. medication call after returning from Coxsackie, he sought
ice packs and brought an empty prescription bottle of Motrin to
be refilled (Harvey Dep. 78:9-80:17).  He expected the
prescription would be refilled and available for him on the
following Monday (Harvey Dep. 80:14-17).

On May 18 and the morning of May 19, 2002, he sought
painkillers and ice packs at each medication run but was refused
by Nurse Osterhout (SOF, ¶ 45; Harvey Aff. ¶ 19).  Harvey
returned on May 19, 2002, for the noon and 4:00 p.m. medication
runs, but upon seeing Nurse Osterhout, he just left, never even
asking for ice or painkillers (Harvey Dep. 89:14-22).  At the
8:00 p.m. medication run, Harvey was served by Nurse Jennings,
who opined that the finger was infected and then lanced, cleaned
and bandaged the finger (SOF, ¶ 45; Harvey Dep. 90:1-92:19; MR
36).  Nurse Jennings also provided Harvey with a course of
antibiotics to be taken for 5-7 days (SOF, ¶ 45; Harvey Dep.
91:18-92:12; MR 36).  Harvey returned to have his finger soaked
in iodine and re-bandaged daily for approximately five days

(Harvey Dep. 93:20-22; MR 35).  On June 4, 2002, the finger was described as "healing well" (MR 32).

Harvey's claim as to his finger thus centers on the alleged denial of ice and painkillers on Saturday and prior to 8:00 p.m. on Sunday.  He does not contest the quality of care he received from Nurse Jennings on May 19, 2002, and he admits that he did not expect to have his Motrin prescription filled until the following Monday (Harvey Dep. 80:14-17).

"Where the prisoner is receiving appropriate on-going treatment for his condition but, instead brings a narrower denial of medical care claim based on a temporary delay or interruption in treatment, the serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner."  *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).  "Because society does not expect that prisoners will have unqualified access to health care," a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  The term "sufficiently serious" has been defined as "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Hathaway*, 99 F.3d at 553.

Other courts in this circuit have found more severe injuries did not pose a substantial risk of serious harm.  It has

been held that the objective prong of the deliberate indifference test is not satisfied even where a finger is broken.  *Henderson v. Doe*, 1999 U.S. Dist. LEXIS 8672, at *2 (S.D.N.Y. June 10, 1999)(that a broken finger was not "sufficiently serious" because it does not produce death, degeneration or extreme pain); *Rivera v. SB Johnson*, 1996 U.S. Dist. LEXIS 14192, at *6-7 (W.D.N.Y. Sept. 25, 1996)(a broken finger, without more, simply does not present a condition of urgency which correspondingly merits constitutional protection); *Sonds v. St. Barnabas Hosp.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001)(a cut finger, even where skin is "ripped off" is not a sufficiently serious injury to justify civil rights relief).  Here, the Court finds that the temporary break in treatment for his injured finger of less than 48 hours is insufficient to meet the threshold showing of serious injury or illness necessary to state an Eighth Amendment claim. Harvey's deliberate indifference claim based upon the treatment he received for his injured finger will be dismissed.

       3.   Delay in receipt of Medications - Atarax and Muro

          a.   Atarax

     From September to December, 2001, Harvey was taking Atarax following a wrist fracture (SOF, ¶ 46; MR 155).  Harvey was prescribed Atarax for the itching caused by the cast (MR 155).  The cast was removed on September 28, 2001 (MR 68).  On December 5 and 12, 2001, Nurse Osterhout wrote notes on his chart

questioning whether the Atarax should be discontinued since his

cast had been removed (SOF, ¶ 46; MR 151-52).  Dr. Gusman agreed,

noting that since Harvey's cast had been removed, there was no

further source of itching for which Atarax was indicated (SOF,

¶ 46; MR 151).  Harvey contends that Nurse Osterhout

inappropriately interfered with his receipt of this medication.

Harvey is mistaken.  Nurse Osterhout did not

discontinue the Atarax unilaterally.  The record reflects that

she simply questioned Dr. Gusman about the propriety of the

prescription in light of the fact that the reason the Atarax had

been prescribed was no longer applicable because the cast had

been removed.  The Court finds that Nurse Osterhout's actions do

not give rise to a constitutional claim.

  b. Muro

Harvey's own complaint demonstrates that he was not

injured by the delay in his receipt of the Muro eye medication

because he states that "upon using the medication, it had an

adverse effect."  (Complaint, ¶ 29; Harvey Dep. 152:16-23).  As

the Muro did not help Harvey's condition, the delay in receiving

the Muro cannot be a basis for a constitutional claim.

**C. Transfer Claim**

The United States Supreme Court has held that the

transfer of an inmate from one correctional facility to another

does not implicate a liberty interest, even when the transfer

resulted in the inmate's loss of "access to vocational, educational, recreational and rehabilitative programs."  *Hewitt v. Helms*, 459 U.S. 460, 467 (1983).  Harvey was transferred from a maximum security prison to a medium security prison because he had been reclassified as a medium security risk.  Because the transfer of an inmate from one facility to another does not implicate a liberty interest, Harvey's transfer to Oneida does not violate his rights under the Eighth Amendment to be free from cruel and unusual punishment.  Therefore, this claim will be dismissed.

A separate order will be entered in accordance with this memorandum opinion.

DATED this 18th day of December, 2006.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court